UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X     Index No.: 1:17-cv-09859

CLARICE GOMES,

        Plaintiff,        **COMPLAINT**

   -against-

               Plaintiff Demands
               a Trial By Jury

HEALTH QUEST MEDICAL PRACTICE, P.C.,

        Defendant.
----------------------------------------------------------------------X

Plaintiff, by and through her attorneys, Phillips & Associates, PLLC, hereby complains of the Defendant, upon information and belief, as follows:

## INTRODUCTION

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §2000e et seq. ("Title VII"), 42 U.S.C. § 1981, and to remedy violations of the Executive Law of the State of New York, based upon the supplemental jurisdiction of this Court pursuant to *Gibb*, 383 U.S. 715 (1966) and 28 U.S.C. §1367, seeking damages to redress the injuries Plaintiff has suffered as a result of being harassed and discriminated against by the Defendant on the basis of her race, together with creating a hostile work environment, retaliation, and wrongful termination.

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 42 U.S.C. 2000e et. Seq.; 42 U.S.C. §1981; 28 U.S.C. §1331, §1343 and supplemental jurisdiction thereto.

3. This action involves a Question of Federal Law.

4. Venue is proper in this district based upon the fact that a substantial part of the events and omissions giving rise to the claim occurred within the Southern District of the State of New York.  28 U.S.C. §1391(b).

5. On or about March 23, 2017, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC").

6. On or about September 22, 2017, Plaintiff received a Notice of Right to Sue Letter from the EEOC.

7. This action is brought within ninety (90) days of said Notice of Right to Sue Letter.

**PARTIES**

8. Plaintiff is an African-American female resident of the State of New York, County of Dutchess.

9. At all times material, Defendant HEALTH QUEST MEDICAL PRACTICE, P.C. (hereinafter also referred to as "HEALTH QUEST") was and is a domestic professional corporation doing business under the laws of the State of New York.

10. At all times material, Defendant HEALTH QUEST operates a medical practice located at 1351 Route 5, Suite 200, Lagrangeville, NY 12540.

11. At all times material, Plaintiff was an employee of Defendant HEALTH QUEST.

**MATERIAL FACTS**

16. On or about March 5, 2015, Plaintiff started working for Defendant HEALTH QUEST as a "Referral Coordinator" at its 1351 Route 5, Suite 200, Lagrangeville, NY 12540 location. Plaintiff's primary duties involved completing patient registration, reviewing details about referrals with patients, and other clerical duties, as needed.

2

17. Beginning with Plaintiff's first day of work, Plaintiff's co-worker, Hayley Fischer, and Defendant HEALTH QUEST's "Supervisor," Erin Clancy, who are both Caucasian, started to harass and stereotype Plaintiff on the basis of her race (African-American).

18. For example, on a daily basis, in Plaintiff's presence, Ms. Fischer and Ms. Clancy would refer to Poughkeepsie's predominantly African-American community (where Plaintiff lived) as **"the ghetto."**

19. On or about August 13, 2015, Plaintiff complained to Defendant's "Manager," Kecia Edwards, about experiencing racial harassment. Plaintiff specifically stated, "[Ms. Fischer] and [Ms. Clancy] are always talking about where I'm from (Poughkeepsie) being ghetto.  It's really offensive."   Ms. Edwards replied, "I will speak to them."  Nevertheless, the harassment continued.

20. For example, the next day, Ms. Fischer stated**, "I am so tired of seeing homeless people from the ghetto digging through the garbage,"** and **"The Rite Aid in [Poughkeepsie] is so ghetto."**  Ms. Clancy joined in the harassment, singing **"the ghetto, the ghetto"** and mocking a hip-hop dance.  Plaintiff was humiliated and she stated, "You can't say that.  It's really offensive to people here.  You need to stop."  Ms. Fischer laughed and said, "I didn't know I was offending anyone."  Plaintiff replied, "You *are* offending people."

21. The next day, Plaintiff returned to work and complained to Ms. Edwards that the harassment continued.  Plaintiff stated, **"[Ms. Clancy] and [Ms. Fischer] keep making racist comments."**  Despite Ms. Edwards' assurances that she would speak to the harassers, the harassment continued.

22. For example, in Plaintiff's presence, Ms. Fischer asked Plaintiff's co-worker, Jossi (last name currently unknown), **"Did you get your haircut in the ghetto, again? Where in the ghetto**

3

**do you go?"**

23. On or about August 14, 2015, Plaintiff complained again to Ms. Edwards, stating, **"[Ms. Fischer] and [Ms. Edwards] keep making racist comments."** Ms. Edwards assured that she would remedy the harassment, but it continued.

24. On or about August 18, 2015, Plaintiff telephoned Defendant HEALTH QUEST's "Human Resources/Compliance" line to complain about Ms. Clancy and Ms. Fischer's racist comments.

25. In around the end of August 2015, Defendant HEALTH QUEST's "HR Representative," Denise Martin, met with Plaintiff to discuss her complaints. During the meeting, Plaintiff stated, "I've complained to [Ms. Edwards] about discrimination, but [Ms. Fischer] and [Ms. Clancy] keep making comments." Ms. Watson told Plaintiff, "I'll investigate and get back to you." Plaintiff did not hear back regarding the result of the alleged investigation.

26. Instead, Defendant's employees began to retaliate against Plaintiff by creating a paper trail of verbal and written reprimands in order to cause her to be terminated or constructively discharged.

27. For example, on or about September 3, 2015, Plaintiff received a write-up for leaving her shift early in June 2015. However, Plaintiff had received approval to leave early on that date.

28. On or about December 18, 2015, Defendant HEALTH QUEST's "Director," Michael Sweeney, threatened Plaintiff and her African-American co-worker, Pamela Hardy, with termination for having personal conversations through the office chat. However, Defendant HEALTH QUEST's Caucasian female employees, Jillian Depressi and Ms. Fischer, regularly used inappropriate language over the office chat, but were never reprimanded.

29. On or about January 15, 2016, Ms. Edwards reprimanded Plaintiff for erroneously clocking in one (1) minute early for work.

4

30. Defendant's failure to properly address Plaintiff's complaints empowered *other* employees to harass Plaintiff on the basis of her race.

31. For example, in or around March 2016, Plaintiff's co-worker, Deborah Garvin, told Plaintiff's co-worker, Sandi Morales, in Plaintiff's presence, **"I don't know how [Plaintiff] can afford things, being an (African-American) single mother of two.    [Plaintiff] must be a pole dancer."** Plaintiff was offended by Ms. Garvin's stereotypical remark about African-American single mothers.

32. On or about April 27, 2016, Plaintiff overheard another conversation between Ms. Garvin and Ms. Morales in the office.  Ms. Garvin stated, **"I don't know if [Plaintiff's] hair is real or not.  It's nappy.  Does [Plaintiff] wears a weave?"**  Plaintiff was offended by Ms. Garvin's stereotypical remark about African-American women's hair.

33. Ms. Garvin also stated, **"[Plaintiff] has to be a stripper to be able to support her children, since she lives in the ghetto,"** and **"[Plaintiff] has such big teeth and her perfume smells terrible."**  Soon thereafter, Defendant's employees began to use one employee's allergy and/or asthma as pretext to harass Plaintiff and Ms. Hardy on the basis of their alleged "strong smell."  Plaintiff and Ms. Hardy, who were the only African-American employees in the department, were repeatedly reprimanded in the workplace.

34. On or about June 10, 2016, in order to further humiliate Plaintiff and push her to resign, Ms. Garvin told Plaintiff and Ms. Hardy, **"Your scent is bothering people in the department."** Plaintiff took this comment to mean that Ms. Garvin did not like their "scent" because of their race.

35. Similarly, in or around June 2016, in Plaintiff's presence, Ms. Edwards told Ms. Hardy, "[Mr. Sweeney] said that you have to use the long back hallway when you go to the bathroom to avoid

employees because of your smell." Plaintiff and Ms. Hardy were humiliated but they agreed to stop wearing perfume and/or deodorant because they wanted to keep their jobs.

36. Even after Plaintiff and Ms. Hardy stopped wearing perfume, Ms. Garvin continued to pretextually complain to Defendant's "Director," Diana Hoffman-Spies, about their "smell."

37. On or about July 29, 2016, in order to intimidate Plaintiff, Ms. Morales told Plaintiff, **"I had a dream that you wanted to kill yourself and then you jumped off the Hudson Bridge."** Ms. Clancy then mocked Plaintiff, stating, "Oh Clarice, I just want to give you a hug."

38. On or about August 24, 2016, Ms. Edwards and Ms. Spies met with Plaintiff and Ms. Garvin regarding Plaintiff's complaints. During the meeting, Plaintiff again complained that Ms. Garvin was discriminating and stereotyping against her because of her race by mentioning her appearance and stating that she "has to work the pole for her kids." At the end of the meeting, Ms. Edwards and Ms. Spies encouraged Plaintiff and Ms. Garvin to apologize to one another. However, Ms. Garvin refused to apologize for her harassing behavior.

39. Based on the ongoing harassment, Plaintiff began to apply for a transfer to other positions within Defendant HEALTH QUEST.

40. On or about October 10, 2016, Plaintiff sent an email to Defendant HEALTH QUEST's "Senior Vice President," Gary Zmrhal, stating, "I have been trying to transfer from my department since the middle of last year. I applied for everything I qualify for and still no interview." Although Mr. Zmrhal stated that he would follow up, Plaintiff did not hear back. As a result, Plaintiff continued to endure racial harassment.

41. On or about December 2, 2016, Plaintiff made a written complaint to Defendants' "HR Director," Kathleen Lant, regarding the ongoing racial harassment. In a letter, Plaintiff wrote, "I'm in great distressed (sic) and need help from HR." Plaintiff also wrote, **"[Ms. Garvin] also**

**talked about my hair, stating I have a weave."** Plaintiff also complained, "[Ms. Garvin] targets only myself and [Ms. Hardy] about the perfume scents. This is not a coincidence," and **"[Ms. Garvin] has also stated I was a stripper. [Ms. Garvin] continues to harass me on a daily basis. I realize she has no fear of management."**

42. On or about December 12, 2016, Plaintiff met with Ms. Lant, to discuss the result of Defendant's investigation. Ms. Lant told Plaintiff, "After conducting a full investigation, there's nothing I can do. It's your word against theirs. But we do have a new policy; that you are not allowed to wear any scents to work." Plaintiff's complaints of racial discrimination were once again ignored.

43. Defendant HEALTH QUEST's employees continued to retaliate against Plaintiff by pretextually complaining about Plaintiff's "strong scent."

44. On or about February 21, 2017, Ms. Lant, Ms. Spies and Ms. Edwards held a staff meeting to discuss the company's "No Perfume" policy. During the meeting, Ms. Spies gave out a written policy and asked all the employees to sign their form in acknowledgment that they understood the policy.

45. After the meeting, and in the presence of her co-worker, Diane Tirado, Plaintiff asked Ms. Spies, "What should I do if I don't want to sign the form?" Ms. Spies became visibly annoyed and replied, "You'll have to meet with HR (Mr. Russell)."

46. On or about February 22, 2017, Ms. Spies gave Plaintiff a "Disciplinary Action Form," and terminated her for insubordination for allegedly throwing the "No Perfume" policy form. However, Plaintiff did not throw the form.

47. Defendant's reason for terminating Plaintiff was pretext.

48. Defendant terminated Plaintiff on the basis of her race.

49. Defendant would not have harassed Plaintiff but for her race.

50. Defendant terminated Plaintiff in retaliation for her ongoing complaints of race discrimination.

51. Defendant's actions were intended to, and did, create a hostile work environment that no reasonable person would tolerate.

52. As a result of Defendant's actions, Plaintiff felt, and continues to feel, extremely humiliated, degraded, violated, embarrassed, and emotionally distressed.

53. As a result of Defendant's discriminatory and intolerable treatment of Plaintiff, she suffered, and continues to suffer, severe emotional distress and physical ailments.

54. As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, the loss of income, the loss of a salary, bonuses, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses and emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

55. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against all of the Defendant, jointly and severally.

**AS A FIRST CAUSE OF ACTION**
**UNDER TITLE VII**
**<u>DISCRIMINATION</u>**

56. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

57. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964; 42 U.S.C. Section(s) 2000e et Seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants.  Plaintiff complains of Defendants'

8

violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex/gender.

58. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq.*, by discriminating against Plaintiff because of her race, together with creating a hostile work environment, retaliation, and wrongful termination.

## AS A SECOND CAUSE OF ACTION
### UNDER TITLE VII
### RETALIATION

59. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

60. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be an unlawful employment practice for an employer:

> "(1) to…discriminate against any of his employees…because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

61. Defendant engaged in an unlawful employment practice prohibited by 42 U.S.C. §2000e et seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

## AS A THIRD CAUSE OF ACTION
### UNDER FEDERAL LAW
### 42 U.S.C. Section 1981

62. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

63. 42 U.S.C. Section 1981 states in relevant part as follows:

(a) Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other.

(b) "Make and enforce contracts" defined. For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

64. Plaintiff, a member of the African-American race, was discriminated against because of her race as provided under 42 U.S.C. Section 1981, as well as being retaliated against for complaining about the harassment and has suffered damages as set forth herein.

**AS A FOURTH CAUSE OF ACTION**
**UNDER STATE LAW**
**<u>DISCRIMINATION</u>**

65. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

66. Executive Law §296 provides that "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's … race… to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

67. Defendant engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her race, together with creating a hostile work environment, retaliation and wrongful termination.

68. Plaintiff hereby makes a claim against Defendant under all of the applicable paragraphs of Executive Law §296.

**AS A FIFTH CAUSE OF ACTION**
**UNDER STATE LAW**
**RETALIATION**

69. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

> "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under   this article."

70. Defendant engaged in an unlawful and discriminatory practice by retaliating, and otherwise discriminating against Plaintiff because of her opposition to Defendant's unlawful actions.

**AS A SIXTH CAUSE OF ACTION**
**UNDER NEW YORK STATE LAW**
**AIDING & ABETTING**

71. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

72. New York Executive Law §296(6) provides that it shall be an unlawful discriminatory practice, "For any person to aid, abet, incite, compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

73. Defendant engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

**WHEREFORE**, Plaintiff, respectfully requests a judgment against the Defendant:

A.  Declaring that the Defendant engaged in an unlawful employment practice prohibited by Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §2000e et seq. ("Title VII"), 42

11

U.S.C. § 1981, and the New York State Executive Law on the basis of Plaintiff's race, together with creating a hostile work environment, retaliation, and wrongful termination;

B. Awarding damages to the Plaintiff, for all lost wages and benefits, past and future, back pay and front pay and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practice;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant' unlawful employment practices.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff demands judgment against Defendant, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relied as the Court deems just and proper.

Dated: New York, New York
      December 18, 2017

By: _____
      **PHILLIPS & ASSOCIATES, PLLC**
      Silvia C. Stanciu, Esq.
      *Attorneys for Plaintiff*
      45 Broadway, Suite 620
      New York, New York 10006
      (212) 248-7431

12